UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DERMOTH REID, *pro se*,  :
                                                                      :
                    Plaintiff,  :
                                                                      :    **MEMORANDUM AND ORDER**
      -against-  :    14-CV-3241 (DLI)(RML)
                                                                      :
TIME WARNER CABLE,  :
                                                                      :
                    Defendant.  :
----------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

On May 23, 2014, *pro se*[1] Plaintiff Dermoth Reid ("Plaintiff") filed the instant action against his former employer, Defendant Time Warner Cable[2] ("Defendant"), alleging that Defendant: (1) discriminated against him on the basis of his disability and failed to accommodate that disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117 ("ADA"); and (2) discriminated against him on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (*See* Complaint ("Compl.") at 1-3, Dkt. Entry No. 1.) Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant moves for dismissal of the Complaint on the ground that it fails to state a claim. (*See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), Dkt. Entry No. 13.) Plaintiff opposes. (*See* Pl.'s Resp. in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n), Dkt. Entry No. 21.) For the reasons set forth below, Defendant's motion is granted and the Complaint is dismissed, with leave to amend.

---

[1] In reviewing the complaint, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed, and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Accordingly, the Court interprets the Complaint "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (emphasis omitted).

[2] According to Defendant, the properly named party is Time Warner Cable New York City LLC. (Def.'s Mem. at *iv.*)

## BACKGROUND

On July 25, 2013, Plaintiff filed a complaint of discrimination concurrently with the New York State Division of Human Rights ("NYSDHR") and the United States Equal Employment Opportunity Commission ("EEOC"). (*See* Ex. B to the Decl. of Marjorie B. Kulak, dated July 6, 2015 ("July 2015 Kulak Decl."), Dkt. Entry No. 14-2.) In the complaint, Plaintiff identified himself as being of Jamaican national origin, and alleged that he was employed by Defendant as a Sales Account Executive from April 28, 2007 until his termination on December 29, 2012.[3] (*Id.* at 5-6.) Plaintiff further alleged that Defendant had discriminated against him on the basis of disability, as well as national origin and/or race. (*Id.* at 5.) Plaintiff did not specify the nature of his disability, stating only that his "health was failing" and that he had sought time off from work to address this "health situation." (*Id.* at 8.*)*

As further alleged in the NYSDHR complaint, Plaintiff's supervisor referred him to Defendant's medical leave administrator for approval of time off to undergo an unidentified procedure. (*Id.*) After taking leave, Plaintiff sought to return to work and thereupon discovered that his employment had been terminated. (*Id.*) In addition, the NYSDHR complaint alleged that the majority of Jamaicans employed by Defendant, including Plaintiff, had been discriminated against. Those allegations, in their entirety, stated as follows: "A majority of the Jamaican[s] have been terminated and not promoted. We remain in the same position and [were] passed over by employee[s] with less seniority and [were] never given a raise." (*Id.*)

On January 22, 2014, the NYSDHR issued its determination on Plaintiff's discrimination complaint, finding no probable cause to believe that Defendant had engaged in discrimination. (*See* Ex. B to the Decl. of Marjorie B. Kulak, dated Sept. 4, 2015, Dkt. Entry No. 19-2.)

---

[3] In ruling on a motion to dismiss in an employment discrimination case, "it is proper for [a] court to consider the plaintiff's relevant filings with the EEOC." *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006).

Subsequently, the EEOC adopted the findings of the NYSDHR and issued Plaintiff a Notice of Dismissal and Right to Sue, dated February 27, 2014. (Compl. at 6.)

Less than 90 days later, on May 23, 2014, Plaintiff filed a form Complaint commencing the instant action. In the form Complaint, Plaintiff checked off boxes indicating that Defendant's discriminatory conduct, in violation of the ADA and Title VII, included: (1) termination of his employment; (2) failure to promote; (3) failure to accommodate his disability; (4) unequal terms and conditions of employment; and (5) other discriminatory acts related to his national origin. (Compl. at 3.) Notably, the Complaint identifies Plaintiff's disability only as "aveloplasty," possibly referring to an oral surgical procedure known as "alveoloplasty" that involves reshaping the jawbone.[4] However, the only facts alleged in the Complaint are that Plaintiff sought his supervisor's permission for time off to address a health condition, took the requested medical leave, and discovered upon seeking to return to work that his employment had been terminated. (*See id.* at 4.) The Complaint does not contain any factual allegations relating to Plaintiff's claim that he was discriminated against on the basis of his national origin.

In his Opposition to the instant motion, Plaintiff clarifies that he was fired while on medical leave to undergo procedures for his teeth and eyes.[5] In particular, Plaintiff allegedly needed time off due to a condition that caused his "mouth to bleed profusely" and his "teeth to shake and fall out." (Pl.'s Opp'n ¶ 9.) This condition affected Plaintiff's appearance and interfered with his primary work responsibility, which was door-to-door sales of internet, cable,

---

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the online medical dictionary definition of "alveoloplasty." *See* Merriam-Webster Medical Dictionary, *Alveoloplasty*, *available at* http://www.merriam-webster.com/medical/alveoloplasty (visited Feb. 13, 2016) (defining "alveoloplasty" as "surgical shaping of the dental alveoli and alveolar processes especially after extraction of several teeth or in preparation for dentures.")

[5] In light of Plaintiff's *pro se* status, the Court takes into account the factual allegations in Plaintiff's Opposition for purposes of deciding the instant motion. *See Pahuja v. Am. Univ. of Antigua*, 2012 WL 6592116, at *1 (S.D.N.Y. Dec. 18, 2012) (in ruling on a motion to dismiss, a court may consider the factual allegations in a *pro se* plaintiff's opposition papers to the extent they are consistent with the allegations in the complaint).

and telephone service. (*Id.* ¶¶ 9-10.) Plaintiff alleges that it was his intention, upon returning to work from medical leave, to request an accommodation that would permit him to solicit new clients by phone, thus limiting his face-to-face contact with customers. (*Id.* ¶¶ 7, 10.) Because of his termination, Plaintiff never had the opportunity to request such an accommodation. (*Id.* ¶¶ 6-8.)

Plaintiff further alleges in his Opposition that, as a Jamaican, he was paid less by Defendant than non-Jamaican employees in the same position even though he was one of the most qualified sales representatives. (*Id.* ¶ 15.) Plaintiff also allegedly was passed over for a promotion to supervisor of the Brooklyn sales team, a position Defendant instead filled by hiring an employee of Guyanese national origin who had no relevant experience. (*Id.* ¶ 18.) Finally, Plaintiff alleges that management regularly hired new sales representatives with limited or no experience, yet paid them twice Plaintiff's salary. (*Id.* ¶ 20.) When Plaintiff or anyone else complained about this practice, they allegedly would be reassigned to a geographic area with "barren or low production in sales." (*Id.*) According to Plaintiff, because he consistently received good performance evaluations at work, there is no explanation other than discrimination as to why he was paid less by Defendant, denied a promotion, and ultimately terminated. (*Id.* ¶ 19.)

## STANDARD OF REVIEW

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6), a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Notably, courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007).

**DISCUSSION**

**I. Administrative Exhaustion**

As a precondition to filing a claim of employment discrimination in federal district court, "a plaintiff [first] must exhaust all available administrative remedies by filing a timely administrative charge with the EEOC or a local fair employment agency." *LaFargue v. River Cafe Co.*, 2015 WL 1469544, at *2 (E.D.N.Y. Mar. 30, 2015) (citing 42 U.S.C. § 2000-5(e) and

5

*Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011)). Nevertheless, a plaintiff in an employment discrimination suit may pursue a new allegation not previously set forth in an administrative charge if it is "reasonably related to the allegations in the charge." *Hoffman*, 443 F. App'x at 649. A new allegation will be considered reasonably related where the administrative charge provided the EEOC or other employment agency with sufficient notice to investigate the allegation. *See id.*

Here, Defendant argues that Plaintiff's allegations that he was paid less, denied a promotion, and reassigned to a low sales area due to his Jamaican national origin were not included in Plaintiff's NYSDHR complaint, and, therefore, those allegations have not been administratively exhausted. (*See* Def.'s Reply Mem. in Supp. of Mot. to Dismiss ("Def.'s Reply") at 5-7, Dkt. Entry No. 18.) However, Plaintiff's NYSDHR complaint alleged as follows: "A majority of the Jamaican[s] have been terminated and not promoted. We remain in the same position and [were] passed over by employee[s] with less seniority and [were] never given a raise." (*See* Ex. B to the July 2015 Kulak Decl.) As pleaded, that allegation provided the NYSDHR and EEOC with sufficient notice to investigate the allegations of national origin discrimination Plaintiff asserts in the instant action. As such, the Court finds that Plaintiff adequately exhausted his claim of national origin discrimination. *See Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003) (claim of race discrimination not included in EEOC complaint adequately exhausted because it "could reasonably be expected to grow out" of other allegations in that complaint.)

## II. Title VII Discrimination Claims

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A claim of employment discrimination under Title VII is analyzed using the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973.) Under that framework, the plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing: "(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015) (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012)).

Nevertheless, "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). In particular, with respect to the fourth prong of the *McDonnell Douglas* analysis, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Id.* (internal quotation marks and citation omitted.) Nevertheless, "a discrimination complaint . . . must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Dooley v. JetBlue Airways Corp.*, 2015 WL 9261293, at *3 (2d Cir. Dec. 18, 2015) (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)) (alteration in original).

Here, although the form Complaint asserts claims of national origin discrimination, it is devoid of any factual allegations to support those claims. (*See generally* Compl. at 1-5.) This, alone, is grounds for dismissing Plaintiff's Title VII discrimination claims. Even if the Court were to consider the factual allegations contained in Plaintiff's Opposition, those allegations still

are woefully insufficient to satisfy Plaintiff's pleading burden. As an initial matter, while Plaintiff's termination qualifies as an adverse employment action, Plaintiff's allegations that he was denied a promotion, reassigned to a low sales area, and paid less due to his national origin are too non-specific to plead an adverse employment action.

Indeed, Plaintiff alleges that he was "passed over for promotion to supervisor of the Brooklyn team," but does not provide any details about when this occurred or what the surrounding circumstances were. (Pl.'s Opp'n at ¶ 17.) Nor does Plaintiff indicate whether he requested to be considered for the promotion, and if so, whether he was qualified to be a supervisor. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) ("We read *McDonnell Douglas* . . . generally to require a plaintiff to allege that he or she applied for a specific position or positions and was rejected therefrom . . . . This general mandate ensures that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer."); *see also Johnson v. Morrison & Foerster, LLP*, 2015 WL 845723, at *3 (S.D.N.Y. Feb. 26, 2015) (dismissing Title VII claim for failure to promote where the plaintiff "[made] no allegation that he ever applied, either formally or informally, for a promotion.") Without additional factual context, the mere fact that Defendant promoted some unspecified person, and it was not Plaintiff, does not establish an adverse employment action.

Plaintiff further alleges that he was paid less than non-Jamaican employees in the same position. "Subjecting an employee to unequal pay can, of course, constitute a materially adverse employment action." *Butler v. New York Health & Racquet Club*, 768 F. Supp. 2d 516, 532 (S.D.N.Y. 2011) (citing *Borrero v. Am. Express Bank Ltd.*, 553 F. Supp. 2d 429, 438 (S.D.N.Y. 2008)). However, Plaintiff does not allege any facts in support of this assertion. For example,

Plaintiff does not describe the timeframe when he allegedly was paid unequally, the nature and extent of the pay disparity, or the identity and national origin of those employees who allegedly received better pay. In fact, Plaintiff does not even allege how he knows that he was paid unequally. Again, in the absence of any supporting factual matter, Plaintiff's conclusory allegation that he was paid less than non-Jamaican employees does not establish an adverse employment action.

Construing Plaintiff's allegations liberally, he also claims that he was reassigned to a low sales areas based on his national origin.[6] (*See* Pl.'s Opp'n ¶ 20.) This, too, is insufficient to allege an adverse employment action. Plaintiff does not identify any specific instance when he was reassigned to a different geographic sales area, nor does he allege any facts to establish that such reassignment resulted in a material disadvantage. Moreover, courts generally recognize that "[a] plaintiff's assigned task, however undesirable it may be, does not constitute an adverse employment action under Title VII if it falls within his or her job responsibilities." *Grant v. New York State Office for People with Developmental Disabilities*, 2013 WL 3973168, at *7 (E.D.N.Y. July 30, 2013) (quoting *Billingslea v. Ford Motor Co., Inc.*, 2010 WL 4861500, at *7 (W.D.N.Y. Nov. 30, 2010)).

Turning to the fourth prong of the *McDonnell Douglas* analysis, Plaintiff's allegations fail to plausibly support a minimal inference that Defendant was motivated by discriminatory animus. Plaintiff does not allege any facts in connection with his termination that would suggest he was fired on account of his national origin. Furthermore, while Plaintiff alleges that non-Jamaican employees in his same position were paid better than he was, that allegation is

---

[6] If Plaintiff elects to file an amended complaint, he should consider whether to frame this claim as one for retaliation under Title VII. The Court by no means suggests that such a claim, so framed, necessarily would survive a subsequent motion to dismiss. Rather, the Court makes this suggestion merely in recognition of Plaintiff's allegation that he was reassigned after approaching management concerning unequal pay issues. (*See* Pl.'s Opp'n ¶ 20.)

9

insufficient to support an inference of discrimination because Plaintiff does not specify the nature of the pay disparity, or the identity and national origin of the employees who allegedly received more favorable treatment. *See Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (dismissing race discrimination claim because, "[w]ithout factual amplification, the generic allegation of disparate treatment related to an unspecified class of Caucasian persons is simply not sufficient to nudge [the plaintiff's] claims across the line from conceivable to plausible.") (internal quotation marks and citation omitted.)

Moreover, Plaintiff does not allege that those better paid employees were similarly situated to him in all material respects. *See Frederick v. United Broth. of Carpenters and Joiners of Amer. (UBCJA) Local 926*, 2014 WL 5783045, at *4 (E.D.N.Y. Nov. 6, 2014) ("To create a plausible inference of discrimination through unequal pay at the pleading stage, a plaintiff must allege that she was paid less than a co-worker outside of her protected class and that she was similarly situated in all material respects [to that individual].") (internal quotation marks and citation omitted); *see also Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 437-38 (S.D.N.Y. 2015) (dismissing discrimination claim where plaintiff of Haitian national origin did not allege that she was similarly situated to non-Haitian employees who allegedly received more favorable treatment). For example, Plaintiff does not indicate whether the employees in question worked under the same supervisor and had the same level of experience or seniority. Importantly, given that Plaintiff was in a sales position, he also fails to indicate to what extent, if any, sales performance factored into compensation.

Finally, Plaintiff alleges that he was passed over for a promotion in favor of an employee of Guyanese national origin. (*See* Pl.'s Opp'n ¶ 18.) However, as the Second Circuit has acknowledged, "whenever one aspirant for promotion is chosen over another, differences will

exist between the aspirants as to race, religion, sex and national origin." *DiLegge v. Gleason*, 131 F. Supp. 2d 520, 526 (S.D.N.Y. 2001) (citing *Fisher v. Vassar College*, 114 F.3d 1332, 1337 (2d Cir. 1997)). Discriminatory intent cannot be inferred out of thin air based on the mere existence of such differences. *Id.* (citing *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998)). In sum, without further factual amplification, Plaintiff's allegations are insufficient to plausibly support his claims of employment discrimination. Accordingly, Plaintiff's Title VII discrimination claims for wrongful termination, failure to promote, and unequal pay and terms of employment are dismissed.

### III. ADA Discrimination Claim

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a *prima facie* case of discrimination under the ADA, a plaintiff must show that: "(1) [the employer] is subject to the ADA; (2) he was a person with a disability within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003).

With respect to an individual, the ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of having such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). To establish a disability under the ADA, a plaintiff generally must show that his or her impairment limits a claimed major life activity with some degree of duration. In other

words, "[s]hort-term injuries, without chronic or long-term impact, are usually not considered substantially limiting impairments within the meaning of the ADA." *Martinez v. New York State Division of Human Rights*, 2015 WL 437399, at *7 (S.D.N.Y. Feb. 2, 2015).

Here, Defendant argues that Plaintiff has not sufficiently alleged a disability within the meaning of the ADA. The Court agrees. In the Complaint, Plaintiff identifies his disability only as "aveloplasty," which seemingly refers to an oral surgical procedure. (Compl. at 3; *see also* Pl.'s Opp'n ¶ 9.) Plaintiff further alleges in his Opposition that his condition "cause[d] his mouth to bleed profusely and teeth to shake and fall out." (Pl.'s Opp'n ¶ 10.) From Plaintiff's allegations, it is not clear whether oral surgery caused these symptoms, or instead, if these were the underlying symptoms of a condition that necessitated surgery. Regardless, Plaintiff does not provide any details concerning the frequency with which these symptoms manifested, or the duration he suffered from them. *Cf.* 42 U.S.C. § 12102(4)(D) (providing that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.") As such, the Court cannot conclude that Defendant suffered from a disability within the meaning of the ADA, as opposed to just the temporary symptoms of a passing condition. *See Holmes v. New York City Dep't of City Wide Administrative Services*, 2015 WL 1958941, at *4 (S.D.N.Y. Apr. 30, 2015) (dismissing ADA claim because alleged knee injury was a "temporary, transitory impairment that does not qualify as a disability"); *Zick v. Waterfront Comm'n of New York Harbor*, 2012 WL 4785703, at *4-5 (S.D.N.Y. Oct. 4, 2012).

Moreover, to qualify as a disability, an impairment must substantially limit a major life activity. 42 U.S.C. § 12102(1). While the ADA explicitly identifies working as a major life activity, 42 U.S.C. § 12102(2)(A), Plaintiff alleges only that his condition made him self-conscious and caused customers to stare at him. (Pl.'s Opp'n ¶ 9.) Given that sole allegation,

which is devoid of any details concerning how often and for how long Plaintiff experienced the symptoms of his condition, the Court cannot conclude that Plaintiff's condition substantially limited his ability to work. Furthermore, courts generally recognize that an "individual's inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Telemaque v. Marriott Int'l, Inc.*, 2016 WL 406384, at *7 (S.D.N.Y. Feb. 2, 2016) (quoting *Aquinas v. Fed. Exp. Corp.*, 940 F. Supp. 73, 78 (S.D.N.Y. 1996)). "Rather, there must be a significant restriction on employment generally, *i.e.*, on plaintiff's ability to perform a class of jobs or a broad range of jobs as compared to an average person of comparable skills and training." *Id.* (quoting *Aquinas*, 940 F. Supp. at 78). While the Court does not rule out that Plaintiff's condition could be disabling, Plaintiff fails to allege a disability because he has not pleaded sufficient factual matter concerning the extent to which his condition prevented him from working.

Finally, under amendments to the ADA made in 2008, Plaintiff is not required to allege an impairment that substantially limited a major life activity if, alternatively, he can establish that he was "regarded as having such an impairment." 42 U.S.C. § 12102(1). As the Second Circuit has recognized: "[A]n individual meets the requirement of 'being regarded as having such an impairment' if the individual shows that an action (e.g. disqualification from a job, program, or service) was taken because of an actual or perceived impairment, *whether or not* that impairment actually limits *or is believed* to limit a major life activity." *Hilton v. Wright*, 673 F.3d 120, 129 (2d Cir. 2012) (quoting H.R. Rep. No. 110-730, pt. 1, at 14 (2008)) (emphasis in original). Nevertheless, Plaintiff does not allege any facts from which the Court could conclude that he was regarded as having such an impairment. *See Holmes*, 2015 WL 1958941, at *4. Accordingly, Plaintiff's ADA discrimination claim is dismissed.

## IV. ADA Failure To Accommodate Claim

To state a claim for failure to accommodate under the ADA, a plaintiff must allege that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [his] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Dooley*, 2015 WL 9261293, at *1 (quoting *McMillan v. City of N.Y.*, 711 F.3d 120, 125-26 (2d Cir. 2013)).

Here, as already established, Plaintiff fails to allege a disability within the meaning of the ADA. Plaintiff's claim that he was denied an accommodation fails for the additional reason that he never actually requested an accommodation. Rather, per his own allegations, Plaintiff *intended* to request an accommodation upon his return from medical leave, but never got the opportunity because he was terminated while on leave. (*See* Pl.'s Opp'n at ¶¶ 7-10.) As such, Plaintiff fails to make a *prima facie* showing that he was denied an accommodation, "as an employer cannot refuse to make an accommodation that it was never asked to make." *Id.* (quoting *McMillan*, 711 F.3d at 126, and *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir. 2009)) (internal quotation marks and alterations omitted.) Accordingly, Plaintiff's failure to accommodate claim is dismissed.

## V. Leave To Replead

In the event of dismissal, Plaintiff seeks leave to amend the Complaint. (Pl.'s Opp'n ¶ 2.) As the Second Circuit has instructed, a district court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotation marks and citation omitted.) While a court need not permit amendment where

it would be futile, amendment is not rendered futile just because a plaintiff's claims are inadequately pleaded. *See id.* At this stage, the Court cannot rule out that Plaintiff, given the opportunity to amend, could state a claim under Title VII and/or the ADA. Accordingly, in light of Plaintiff's *pro se* status, his request for leave to amend the Complaint is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted and the Complaint is dismissed in its entirety, without prejudice. By NO LATER THAN MARCH 29, 2016, Plaintiff may file an amended complaint in accordance with this Order. If Plaintiff elects to file an amended complaint, it must be captioned as an "AMENDED COMPLAINT" and bear the same docket number as this Order. For Plaintiff's convenience, Instructions on How to Amend a Complaint are attached. If Plaintiff fails to file an amended complaint by March 29, 2016, the Complaint will be dismissed, with prejudice, and this action will be closed. The Court certifies pursuant to 28 U.S.C. §1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      February 22, 2016

                                          /s/
                                  DORA L. IRIZARRY
                              United States District Judge