UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
DERMOTH REID,                                          :
                                                      :
                          Plaintiff,                  :
                                                      :      **OPINION AND ORDER**
          -against-                                   :
                                                      :      14-CV-3241 (DLI) (RML)
TIME WARNER CABLE NEW YORK CITY                       :
LLC,                                                  :
                                                      :
                          Defendant.                  :
-------------------------------------------------------- x

**DORA L. IRIZARRY**, Chief United States District Judge:

Plaintiff Dermoth Reid ("Plaintiff") is a male of Jamaican origin, residing in Queens, New York. (Second Amended Complaint, ("SAC") Dkt. Entry No. 48, ¶ 8.) Defendant Time Warner Cable New York City LLC ("Time Warner" or "Defendant") is a cable television company with offices located at 769 Fifth Avenue, Brooklyn, NY 11222. (SAC ¶ 9.) Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"), the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*, as amended by the ADA Amendments Act of 2008 ("ADA"), the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"), New York Labor Law § 195, 217 ("NYLL"), and the Consolidated Omnibus Budget Reconciliation Act 29 U.S.C. § 1166 ("COBRA").  Plaintiff seeks reinstatement, back pay and front pay, actual and liquidated damages, compensatory and punitive damages, statutory damages, attorney's fees, costs and disbursements, and such other and further relief as this Court deems necessary and proper. (SAC ¶ 74.)

On May 23, 2014, Plaintiff, proceeding *pro se*, filed this lawsuit against Defendant, alleging claims under Title VII and the ADA only.  (*See* Compl., Dkt. Entry No. 1.)  On July 6, 2015, Defendant moved to dismiss the complaint.  (*See* Motion to Dismiss, Dkt. Entry No. 12.)

On February 22, 2016, this Court granted Defendant's motion, dismissing the complaint with leave to amend. (*See* Memorandum and Order granting Motion to Dismiss ("M&O"), Dkt. Entry No. 23.) On April 5, 2016, Plaintiff, still proceeding *pro se*, filed an amended complaint, again asserting claims under Title VII and the ADA only. (*See* Am. Compl., Dkt. Entry No. 25.) Defendant moved to dismiss the amended complaint. (*See* Motion to Dismiss, Dkt. Entry No. 28.)

On October 14, 2016, Plaintiff engaged *pro bono* counsel for the limited purpose of mediation. (*See* Notice of Appearance, Dkt. Entry No. 39.) Due to the pending mediation session, the Court terminated Defendant's motion to dismiss the amended complaint as moot. (*See* Order dated November 22, 2016.) When mediation failed to settle the case, Plaintiff's *pro bono* counsel extended her representation of Plaintiff and moved to file a second amended complaint on his behalf. (*See* Letter Seeking Leave to File, Dkt. Entry No. 45.) The Court granted the request, and, on March 20, 2017, Plaintiff filed his second amended complaint. (*See* Order dated February 21, 2017.)

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant moved to dismiss the second amended complaint for failure to state a claim for relief. (*See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mot."), Dkt. Entry No. 52.) Plaintiff opposed the motion, (*See* Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Opp'n."), Dkt. Entry No. 57), and Defendant replied. (*See* Def.'s Reply Mem. In Supp. Of Mot. To Dismiss ("Reply"), Dkt. Entry No. 59.)

## Background

Plaintiff is of Jamaican origin and was employed by Defendant as a direct sales associate from April 2007 until 2013. (SAC ¶¶ 10, 12, 46.) According to the records of Defendant's leave administrator, Plaintiff was terminated on April 25, 2013 after taking medical leave for periodontitis. (*Id.* ¶ 24, 46.)

In 2010, Defendant created two new positions in the sales unit: a "win-back specialist" and a "retention specialist." (*Id.* ¶ 13.)  Plaintiff repeatedly reached out to supervisors to inform them of his interest in these positions. (*Id.* ¶ 15.)   Plaintiff alleges that the requirements for these positions were the same as the requirements for those positions held by him, and his Jamaican colleagues.  (*Id.* ¶ 14).  However, Defendant did not hire Plaintiff or his Jamaican colleagues for "win-back specialist" or "retention specialist" positions. (*Id.* ¶¶ 14, 15.) Plaintiff also alleges that he, and his Jamaican colleagues, earned less than those employed in the two new positions. (*Id.* ¶ 15.)

Plaintiff alleges that, "on several occasions," he advised supervisors that he believed that Defendant subjected the Jamaican workers to disparate treatment and poor working conditions. (*Id.* ¶¶ 18,19.)  After Plaintiff raised these issues, supervisors allegedly told him that he had a reputation for being a "big mouth," and they discouraged him from applying for promotions. (*Id.* ¶ 20.)

Around the summer of 2012, Plaintiff began to suffer from chronic periodontitis and buccal exostosis. (*Id.* ¶ 21.) Plaintiff's teeth fell out and his gums bled profusely, interfering with his ability to eat, speak, work, and drink. (*Id.* ¶ 21.) Beginning in the summer of 2012, Plaintiff spoke with supervisors multiple times about requesting medical leave, but was told to wait until December. (*Id.* ¶¶ 22, 23.)

In December 2012, Plaintiff again requested medical leave. On December 29, 2012, Defendant told Plaintiff that he could take leave and to contact Unum Group ("Unum"), the company's leave administrator, to request his leave. (*Id.* ¶¶ 24, 25.)  Plaintiff left work on December 29, 2012. (*Id.* ¶ 24.) However, Unum did not approve Plaintiff's leave under the FMLA or Plaintiff's short term disability because it did not receive sufficient documentation from

Plaintiff's attending physician. (*Id.* ¶¶ 33, 34.)  Plaintiff was notified of the denial via letter on February 20, 2013. (*Id.* ¶ 33.)

Plaintiff attempted to return to work on June 3, 2013, but a supervisor told him that Defendant did not have him "in the system." (*Id.* ¶ 40.)  When Plaintiff applied for unemployment benefits in June 2013, he discovered that he had been terminated. (*Id.* ¶ 42.)  The records of Defendant's leave administrator indicate that Plaintiff was terminated on April 25, 2013. (*Id.* ¶ 46.)  Plaintiff alleges that he never received a termination letter from Defendant, or any notice that he was at risk of being terminated. (*Id.* ¶¶ 42, 48.)  Plaintiff contends that Defendant never sent him a COBRA package informing him of his rights to continue under the company healthcare plan. (*Id.* ¶¶ 48, 49.)

## Discussion

## I. Motion to Dismiss Standard

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6), a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## II. Title VII

### A. Legal Standard

In order to establish a *prima facie* case for employment discrimination under Title VII, Plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008) (citing *Feingold v. New York*, 366 F.3d 138,152 (2d Cir. 2004)).

To survive a motion to dismiss on a claim for retaliation under Title VII, Plaintiff must allege that: (1) he participated in a protected activity; (2) Defendant knew of his participation; (3) he was subject to an adverse employment action; and (4) there was a causal connection between the participation in the protected activity and the adverse employment action. *Moy v. Perez*, 2017 WL 4534777 at *1 (2d Cir. Oct. 11, 2017) (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). Retaliation must be a "but for" cause of the adverse employment action. *Id.* (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)).

### B. Arguments

Defendant contends that Plaintiff's Title VII claims for discrimination and retaliation should be dismissed. First, Defendant asserts that Plaintiff failed to exhaust administrative remedies before filing the lawsuit. Defendant alleges that Plaintiff failed to cooperate with the New York State Department of Human Rights ("NYSDHR") investigation by failing to give NYSDHR the names of individuals who were promoted instead of him. (Def.'s Mot. at 14-15.)  Defendant asserts that Plaintiff was required to file his Equal Employment Opportunity Commission ("EEOC") charge within 300 days of the alleged incident underlying the claim, and he failed to do so. (*Id.* at 16.)  Defendant asserts that Plaintiff filed the EEOC charge on July 25, 2013, over three years after Plaintiff claims that he was unlawfully denied promotions, in March of 2010 and 2012. (*Id.*) Defendant asserts that the continuing violation theory does not excuse inaction because it does not apply to discrete employment decisions such as denial of promotions.  (Reply at 5, citing *Chin v. Port Auth. of N.Y. & New Jersey*, 685 F.3d 135, 157 (2d Cir. 2012)). Defendant contends that Plaintiff has not exhausted his administrative remedies for the retaliation claim because Plaintiff did not assert the claim in the NYSDHR complaint. (*Id.* at 7.)

Second, Defendant argues that Plaintiff's allegations are insufficient. (Def.'s Mot. at 16-17.)  Plaintiff does not allege that he applied for the specialist positions, only that he "expressed interest," which is insufficient for a failure to promote claim. (*Id.*)  Moreover, Plaintiff fails to name or identify the national origins of those employees who received the positions, and, therefore, fails to plead an "inference of discriminatory intent." (*Id.* at 17.)  Defendant asserts that Plaintiff does not state a claim of pay discrimination as he does not allege facts that the differences in pay between Jamaican and non-Jamaican employees were motivated by discriminatory animus. (*Id.*) Finally, Defendant asserts that Plaintiff fails to plead any direct evidence of a retaliatory animus.

Defendant contends that the time between Plaintiff's complaints to his supervisors, made in 2010 and 2012, and the termination, in 2013, are too far removed to suggest an inference of discrimination.

Plaintiff opposes dismissal of his Title VII claim. (Opp'n. at 15.)  Plaintiff notes that the Court held previously that Plaintiff exhausted his administrative remedies, and there is no reason to reconsider that ruling.  (*See Reid v. Time Warner Cable*, No. 14-cv-3241, 2016 WL 743394, at *3; Opp'n. at 15.)  Plaintiff asserts that Defendant cannot show that he did not cooperate in good faith with the NYSDHR investigation. (*Id.* at 15-16.)  Furthermore, Plaintiff pled that similarly situated employees not of Jamaican origin received the specialist positions. (*Id.* at 17.)

Plaintiff maintains that his discrimination claim is timely. Plaintiff alleges that he continued to ask his supervisor for reassignment through 2012. As such, those denials should be considered a continuing violation, and the claim was filed with the EEOC within 300 days of those continued violations. (*Id.* at 16-17.)  According to Plaintiff, the retaliation claim is reasonably related to those in the NYSDHR. (*Id.* at 20.)

## C. Analysis

Plaintiff, as a person of Jamaican origin, is part of a protected class based on his national origin. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).  Plaintiff alleges that he was qualified as a direct sales associate, the position that he held while in the employ of Defendant. (SAC ¶ 11.)  Plaintiff contends he never received any complaints from Defendant about the quality of his work, maintained good attendance, and received positive reviews. (*Id.*)  Plaintiff alleges that the job qualifications and requirements for Plaintiff, and his Jamaican colleagues, were the same as those of the win-back and retention specialists, in that they sought to obtain new customers and

win back prior customers, and to learn whether customers were satisfied with their services. (*Id.* ¶ 14.)

Plaintiff alleges multiple adverse employment actions, including failure to be promoted as a win-back or retention specialist, pay disparity between Jamaican and non-Jamaican workers, and disparate working conditions for Jamaican employees. (*Id.* ¶¶ 15, 16.) "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.... An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse,* 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Joseph v. Leavitt,* 465 F.3d 87, 90 (2d Cir. 2006)).

Plaintiff does not plead that he formally applied for the win-back or retention specialist positions, only that he "asked supervisors for an opportunity to work in one of these new positions." (SAC ¶¶ 15, 17-18.) In *Brown v. Coach Stores, Inc.*, the Second Circuit held that, in order to plead a failure to promote claim, the plaintiff was required, "to allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion." 163 F.3d 706, 710 (2d Cir. 1998). Thus, Plaintiff fails to allege that Defendant's failure to promote him to the position of either win-back specialist or retention specialist was an adverse employment action within the meaning of Title VII.

Plaintiff alleges that he, and his Jamaican colleagues, received lower wages and commissions than the win-back specialists and retention specialists. (SAC ¶ 16.) Plaintiff alleges that he received an office wide memorandum stating that win-back specialist and retention specialist employees would receive an annual base salary of $40,000 and received a $5,000 commission after signing up 15 customers.  Plaintiff alleges that the win-back and retention

specialists included white, Latino and African American sales associates. (*Id.*) Plaintiff contends that he, and his Jamaican colleagues, earned an hourly rate of $10.50 and received a commission after obtaining 30 customers. (*Id.* ¶ 12.) Plaintiff does not allege that the higher paid retention and win-back specialists were similarly situated to Plaintiff and those in Plaintiff's position. The position must be "sufficiently similar ... to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall,* 263 F.3d 49, 54 (2d Cir. 2001). Here, the difference in pay between two different roles in the company does not support an inference that the disparity is attributable to discrimination.

With respect to Plaintiff's claim of disparate working conditions for Jamaican workers, Plaintiff pleads that Defendant sent sales associates out into the field during severe weather, including in freezing temperatures, snow, and rain. (SAC ¶ 19.) Being "assigned undesirable work duties" is not sufficient to allege an adverse employment action. *See Grant v. New York State Office for People with Developmental Disabilities*, 2013 WL 3973168 (E.D.N.Y. July 30, 2013).

Moreover, Plaintiff's allegations fail to support a minimal inference that Defendant's actions gave rise to an inference of discrimination. Plaintiff does not allege that Defendant made any statements that disparaged people of Jamaican origin, nor does he plead any other facts that suggest that he suffered an adverse employment action on account of his national origin.

With respect to Plaintiff's retaliation claim, Plaintiff alleges that he was retaliated against for "opposing acts that violate Title VII" and "for asserting rights under Title VII" when he complained to management about the alleged discrimination. (SAC ¶ 54.) Plaintiff alleges that, in response, management refused to promote Plaintiff for jobs he was qualified for and ultimately terminated his employment. (*Id.*) Title VII makes it unlawful for an employer to retaliate against an employee for opposing any practice made unlawful by Title VII or to retaliate

against an individual because they made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–3(a)).

Plaintiff fails to plead a causal connection between the protected activity and the adverse employment action. A causal connection can be established: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). Plaintiff fails to plead, either through circumstantial or direct evidence, that a causal connection exists between the protected activity he engaged in and the failure to promote and/or termination. Plaintiff states only that, "as a result, Defendant's management refused to promote Plaintiff for jobs he was qualified for, and eventually terminated him." (SAC ¶ 54.)

Plaintiff fails to establish a Title VII claim for discrimination or retaliation on the basis of national origin. Accordingly, those claims are dismissed.

### III. ADA

### A.  Legal Standard

The ADA establishes that no covered entity "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To plead a discrimination claim under the ADA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential

functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). While a plaintiff is not required to make out a *prima facie* case in order to survive a motion to dismiss, the elements of the claim are instructive in analyzing whether a plaintiff has alleged sufficient facts giving rise to a claim. *See Bernadotte v. New York Hosp. Med. Ctr. of Queens*, 2014 WL 808013, at *7 (E.D.N.Y. Feb. 28, 2014).

Under the ADA, the term "disability" means: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include performing manual tasks, eating, lifting, and working. 42 U.S.C. § 12102(2)(A). To determine if a major life activity is substantially limited, courts in this Circuit rely on the EEOC regulations. *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998). Under those regulations, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA and is not meant to be a demanding standard." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 n.3 (2d Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(i)). Accordingly, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

The elements of a retaliation claim under the ADA include a showing that: (1) the plaintiff was engaged in a protected activity; (2) the alleged retaliator knew that plaintiff was involved in a protected activity; (3) an adverse decision or course of action was taken against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action. *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002).

### B.  Arguments

Plaintiff brings claims under the ADA for both discrimination and retaliation. (SAC ¶ 57, 60.) Defendant asserts that Plaintiff failed to plead that he was disabled. (Def.'s Mot. at 9-12.) Defendant contends that Plaintiff failed to provide any details about the frequency or duration of his symptoms and failed to plead facts that would enable a court to infer that his disability substantially limited a major life activity. (*Id.* at 9-11.)  Defendant alleges that Plaintiff referred to his disability as "temporary" in his prior complaint and sworn affirmation, and such temporary impairments are not protected. (*Id.* at 10.)

Plaintiff asserts that, contrary to Defendant's assertions, he was disabled under the ADA because he suffered from chronic periodontitis and his "teeth began to fall out and his gums to bleed profusely-symptoms that interfered with his ability to speak, work, eat and drink" and that "he had experienced bleeding from the mouth in front of customers." (SAC ¶ 21, 22).

With respect to Plaintiff's retaliation claim under the ADA, Plaintiff pleads that, as the symptoms of his dental disease worsened in the summer of 2012, he discussed his medical condition with two managers and requested time off to seek treatment. (SAC ¶ 22.) Plaintiff alleges that he made a request to wear sunglasses in the field because he was having trouble with an eye impairment in September 2012. (*Id.* ¶ 23.) Plaintiff alleges that he made his last request for leave in December 2012 and, subsequently, was granted leave. (*Id.* ¶ 24.)

Defendant argues that Plaintiff failed to plead that he was engaged in a protected activity because he neither communicated to his supervisors that he had a disability nor requested reasonable accommodations. (Def.'s Mot. at 12.)  Plaintiff argues that his requests for working accommodations and leave in 2012 constitute a request for reasonable accommodations. (SAC ¶¶ 13-14, 22-24.)

### C. Analysis

While Plaintiff states that he brings a claim for discrimination under the ADA, he fails to plead, even conclusorily, the first and fourth elements. Plaintiff does not plead that Defendant is an employer within the meaning of the ADA, nor does he plead that he suffered an adverse employment action in this context. Plaintiff's pleading of the discrimination claim reads, instead, like a duplicative claim for retaliation under the ADA.

Plaintiff alleges that Defendant retaliated against him by terminating him due to his requests for accommodations. However, Plaintiff fails to plead a causal connection between the requests and the termination, and fails to explain how his requests, such as the request to wear sunglasses in the field, would reasonably accommodate his periodontitis.

Causation may be shown: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence, such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant. *Dechberry v. N.Y. City Fire Dept.*, 124 F. Supp.3d 131, 154 (E.D.N.Y. Aug. 14, 2015) (quoting *Gordon v. N.Y. City Bd. of Edu.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Plaintiff did not plead a temporal relationship that would satisfy an indirect inference of retaliation. District courts in the Second Circuit "have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." *Dechberry* 124 F. Supp.3d at 155 (quoting *Beaumont v. Cablevision Sys. Corp.,* 2012 WL 1158802, at *6 (E.D.N.Y. Apr. 9, 2012)). Plaintiff pleads that the he requested accommodations in the summer and fall of 2012 and the termination occurred in April 2013, a period significantly greater than two months. (SAC ¶¶ 22-24, 46.)

13

Plaintiff also fails to plead facts that could lead to a direct inference of retaliation. Plaintiff pleads only that he "requested medical leave as an accommodation for his disability and was retaliated against when Defendant terminated him." (*Id.* ¶ 60.) This conclusory allegation fails to convey plausibly an inference of retaliatory animus.   Accordingly, Plaintiff's claims for discrimination and retaliation under the ADA are dismissed.

## IV. FMLA

### A.  Legal Standard

The FMLA was enacted "to balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition."  29 U.S.C. § 2601(b)(1)-(2).  To this end, the FMLA entitles eligible employees "a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. §§ 2612(a)(1)(D), (b).  "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(A), (B).  To qualify as an "eligible employee," the employee must have been employed (1) "for at least 12 months by the employer," and (2) "for at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C. § 2611(2)(A).

Interfering with, restraining, or denying an employee's rights under the FMLA is unlawful. 29 U.S.C. § 2615(a)(1); *See also Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004) (per curium).  The prohibition against interference also prohibits employers from discriminating or retaliating against an employee from having exercised or attempting to exercise FMLA rights.

29 C.F.R. § 825.220(c); 29 U.S.C. § 2615(a)(2); *See also Potenza*, 365 F.3d at 167.  In the Second Circuit, these prohibitions create separate and distinct claims for interference and retaliation under the FMLA.  *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 175 (2d Cir. 2006); *see also Potenza*, 365 F.3d at 167 (discussing the distinction between interference and retaliation claims under the FMLA).

In *Graziadio v. Culinary Institute of America*, 817 F.3d 415 (2d Cir. 2016), the Second Circuit adopted the standard for a cause of action of interference under the FMLA.  To prevail on a claim of interference under the FMLA, a plaintiff must establish:  (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA.  *Id.* at 424.

In order to make out a *prima facie* case for retaliation under the FMLA, Plaintiff must establish that: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Siesta*, 445 F.3d at 175; *Potenza*, 365 F.3d at 167.

## B.  Arguments

First, Defendant argues that Plaintiff's FMLA retaliation claim is untimely.  (Def.'s Mot. at 21.)  The FMLA statute of limitations is two years, or three years for a willful violation.  (*Id.*, citing 29 U.S.C.A. 2617(c)(1)-(2).)  Even if Plaintiff proves a willful violation, the statute of limitations expired on June 3, 2016, three years after Plaintiff's termination.  (*Id.*)  Defendant

asserts that Plaintiff's claims do not relate back to the claims in the original complaint, and, therefore, the FMLA claims are untimely. (*Id.* at 22.)

Second, Defendant asserts that Plaintiff did not have a serious health condition because the FMLA regulations expressly provide that periodontal disease is not a serious health condition "unless complications arise," and Defendant asserts that Plaintiff has not pled that complications arose from his chronic periodontitis. (29 C.F.R. § 825.113(d); Def.'s Mot. at 23.)

Third, Defendant urges the Court to dismiss the claims that Time Warner interfered with Plaintiff's rights under the FMLA and terminated him in retaliation for taking FMLA leave because Plaintiff's leave exceeded the twelve-week period allowed by the FMLA by nine weeks. (*Id*. at 23.)

Plaintiff argues that his claims are timely because the FMLA claims relate back to his timely filed claims in the original complaint, putting Defendant on notice of the FMLA claims. (Opp'n. at 21.) Plaintiff asserts that he alleges a serious health condition covered under the FMLA because periodontal disease with complications constitutes a serious health condition. (*Id.* at 23-24.) Additionally, Plaintiff argues that his FMLA claims do not fail because Defendant's misinformation prevented him from conforming to the twelve-week requirement. (*Id.* at 24-25.) Plaintiff asserts that, when an employee has been given conflicting information about his entitlement to FMLA leave and is not able to conform his conduct accordingly, the fact that he may have taken more than twelve weeks does not defeat an FMLA claim. (*Id*. citing *Ridgeway v. Royal Bank of Scotland Group*, 2012 WL 1033532, at *7 (D. Conn. Mar. 27, 2012); *Fry v. First Fidelity Bancorporation*, 1996 WL 36910 at *4 (E.D. Pa. 1996).) Plaintiff asserts that he was in communication with Defendant's leave administrators, yet was not informed to return to work on a given date in order to comply with the twelve-week limit under the FMLA. (*Id.* at 25.)

### C. Analysis

Plaintiff pled that he suffers from a serious health condition, as defined by the FMLA, by alleging that he "communicated with his dentist regularly and attended appointments with her during the entire duration of his leave" and that he underwent several surgical procedures during his leave. (SAC ¶¶ 27, 37.) Plaintiff pled that he had been employed by Defendant for over five years, and that during the twelve months preceding his leave, he worked at least 1,250 hours. (*Id.* ¶ 8).

Defendant asserts that the FMLA claims should be dismissed because they are untimely. Rule 15(c) of the Federal Rules of Civil Procedure permits relation back of an amendment to the original complaint, where "the amendment asserts a claim ... that arose out of the same conduct, transaction, or occurrence set out ... in the original pleading." Where the amendment would involve a new cause of action, however, the district court may deny leave unless "the original complaint gave the defendant fair notice of the newly alleged claims." *Wilson v. Fairchild Republic Co.,* 143 F.3d 733, 738 (2d Cir. 1998.) Since Plaintiff's original complaint asserts  claims under the ADA and Title VII only, the Court must consider whether those claims put the Defendant on notice of a claim under the FMLA.

The Court finds that Plaintiff's claims under the FMLA relate back to Plaintiff's original complaint. The facts alleged in Plaintiff's original complaint relate to his leave. (See Compl. ¶ 8, Dkt. Entry No.1. ("I requested time off because my Health failing. I express this to my manager John Grimes who granted me the leave and to have Michael Moore the supervisor schedule the time.")) The facts in Plaintiff's original complaint, which was filed *pro se*, arise under the same conduct as those pled in the FMLA claim in the second amended complaint, namely the contact Plaintiff had with Defendant regarding leave and that Plaintiff had informed Defendant of his

intent to take leave for medical purposes. (SAC ¶¶ 24-26.) The facts alleged in the original complaint, which must be liberally construed (*See Erikson v. Pardus*, 551 U.S. 89, 94 (2007)), put the Defendant on fair notice of the FMLA claim.

The FMLA allows for twelve weeks of leave during any twelve-month period. Plaintiff's leave exceeded the allowable twelve weeks by nine weeks. (*Id.* ¶¶ 26, 40.) Plaintiff asserts a cause of action for interference of his rights under the FMLA because he alleges that Defendant gave him misleading information regarding the requirements of FMLA leave. (*Id.*¶ 63; Opp'n. at 24.)

Plaintiff cites two cases in support of his argument, *Ridgeway v. Royal Bank of Scotland Group*, 2012 WL 1033532, at *7 (D. Conn. Mar. 27, 2012) and *Fry v. First Fidelity Bancorporation*, 1996 WL 36910 at *4 (E.D. Pa. 1996)). Both cases are distinguishable. Plaintiffs there took significantly shorter leave over the allowed twelve weeks than Plaintiff: both took an extra four weeks as opposed to Plaintiff's nine. *Ridgeway* 2012 WL 1033532, at *7; *Fry* 1996 WL 36910 at *4. Moreover, the plaintiffs in *Ridgeway* and *Fry* relied on affirmative information regarding leave given to them by their employers. In *Ridgeway*, the plaintiff alleged that the defendant changed the way in which it calculated its FMLA leave without notifying the plaintiff, which interfered with the scheduling of his surgery. In *Fry*, the plaintiff pled that there was a conflict between the requirements of FMLA leave and the defendant's own leave policy, which allowed sixteen weeks of leave. The plaintiff alleged that the defendant's failure to notify her of the conflict interfered with her ability to receive the FMLA benefits to which she was entitled.

In contrast, Plaintiff here does not allege that Defendant provided him with misleading information about the length of his leave. Plaintiff offers no reason why he believed that he was entitled to twenty-one weeks of leave under the FMLA, let alone that Defendant was responsible

for that belief. Accordingly, Plaintiff's claims for interference and retaliation pursuant to the FMLA are dismissed.

## V. COBRA

### A. Legal Standard

Sections 1161-1168 of COBRA were codified as part of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). COBRA provides that an employee may continue to receive health care coverage at a group rate even after his or her termination. *See* 29 U.S.C. §§ 1161(a), 1163.  "The purpose of COBRA is to allow employees who lose their jobs to continue their medical coverage at approximately the group rate, which is lower than the rate for individual coverage." *Vangas v. Montefiore Med. Ctr.*, 2014 WL 5786720, at *8-9 (S.D.N.Y. Nov. 5, 2014) (citing *Local 217, Hotel & Rest. Emps. Union v. MHM, Inc.,* 976 F.2d 805, 809 (2d Cir. 1992)).

When examining a defendant's liability under COBRA for failure to comply with COBRA's notice provisions, courts typically refer to § 1132(c) as the applicable provision. As district courts in this Circuit have held, based on the language of § 1132(c), statutory damages for failure to comply with COBRA's notice provisions are not available against an employer who is not the plan administrator. *See* 29 U.S.C.S. § 1132(c)(1); *Von Maack v. Wyckoff Heights Med. Ctr.*, 2016 WL 3509338, at *48 (S.D.N.Y. June 21, 2016) (citing *Gill v. Acacia Network*, 2015 WL 1254774, at *11 (S.D.N.Y. Mar. 18, 2015)); *Capobianco v. Sandow Media Corp.*, 2012 WL 4561761, at *20-21 (S.D.N.Y. Sept. 29, 2012) (finding a plaintiff's pleadings "insufficient to support a claim against" her employer because "damages are not available against an employer who is not the administrator" under 29 U.S.C. §§ 1132(c)(1), (3)).

19

**B. Arguments**

Defendant urges the Court to dismiss Plaintiff's claim that he was not sent a COBRA notice because Defendant sent Plaintiff such notice on May 1, 2013. (Def.'s Mot. at 24.)  Defendant attached the notice to its motion.  (*Id.* at 24; *Khatri* Decl. 6, Exs. A-B.) Defendant argues that the claim should be dismissed as untimely because it was asserted more than three years after the termination of Plaintiff's coverage and does not relate back. (Def.'s Mot. at 24; Reply at 10.) Furthermore, Defendant asserts that the plan administrator, not the employer, is responsible for sending out the COBRA notice and Plaintiff fails to plead that Defendant was the plan administrator. (Def's Mot. at 25.)

**C. Analysis**

 Since Plaintiff failed to allege that Defendant is the plan administrator and fails to assert a cause of action against the plan administrator, the claim must be dismissed. *See Gill v. ACACIA Network*, 2015 WL 1254774 at *4 (S.D.N.Y. March 18, 2015) ("While statutory damages are available for failure to comply with COBRA's notice provisions, they are available only against the actual plan administrator – not against an employer who is not the plan administrator…. Thus to successfully plead a COBRA claim, a plaintiff must name the plan administrator as a defendant.")

## VII. NEW YORK LABOR LAW

As no federal claims remain, the Court declines to exercise supplemental jurisdiction over

Plaintiff's New York Labor Law claims, which are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
       March 30, 2018

                                        _____
                                                    /s/
                                        DORA L. IRIZARRY
                                        Chief Judge